## LOUGHRIDGE v. THE STATE.

A freeman, accessary to a felony committed by a slave, is punishable in the same manner as though the principal was a freeman.

Appeal from the Circuit Court of Jefferson County

*Bricky Circuit Attorney.*

1st. Did the circuit court err in overruling the defendants motion to compell the State to elect which count of the two she would go to trial upon?

2nd. Did the circuit err in refusing to give the jury the 3rd instruction asked for by the defendant?

3d. Is there error in overruling the defendants motion for a new trial?

4th. Did the court err in giving the jury further instructions when they came into court and made the request?

*Opinion of the Court by Tompkins Judge.*

Loughridge was indicted in the St. Louis county, and on his application the venue was changed to Jefferson county. He was there found guilty, and appeals to this court.

He was indicted for aiding Perry and Hanson, two slaves, in committing, 1st, an assault with intent to kill: 2nd. an assault and battery, with intent to kill, on one Reuben Cranmer.

One of the witnesses states, that some time in the month of February last, on the day that Cranmer was shot, he, passing in the upper part of the city of St. Louis, heard the report of a gun, and heard Cranmer say, that he was shot: the witness stated that he immediately looked to the stable of Loughridge where he saw smoke, and thought that the gun had been shot from that place; that he and another person went towards the stable to see that none should escape, and to find out if possible who had shot the gun; that while they approaching the stable Loughridge come out of his dwelling house and asked who was shot, who was killed, or words to that effect; that he was laughing and seemed highly pleased; that he told Loughridge, he knew that he Loughridge did not shoot the gun, but that it was shot from the stable, and he intended to see who had shot it; that Lough-

ridge said he had sent the negroes Perry and Hanson to the stable to take care of his horses and hay, and that no man should search his stable; that he was responsible for what the negroes did, and then called for his gun, and that it was brought to him by his son; that he raised it partly up to his face and said that he would stand up to any man who would face him with a gun; that in a short time the negroes came out of the stable, got into a wagon and went down town; that Loughridge then got on his horse and in a few minutes rode off.

Cranmer stated that in the month of February last, whilst he was engaged in cutting some wood in front of his house, he was shot by some one from the stable of Loughridge; which is about from forty to sixty feet from the house of the witness: that the ball entered his right shoulder and injured him so seriously that he has not been able to perform any labour since that time; that he then went into his house, and in a few minutes thereafter, he saw Loughridge in his own yard with his gun in his hand and laughing.

A witness named Moore stated that on the day Cranmer was shot, in the month of February last, he was sitting in his own door, near where Cranmer and Loughridge lived, when he heard the report of a gun and cries of murder; that he immediately started to the place from which he supposed the gun had been shot; that on his arrival at the stable of Loughridge, which is within sixty feet of Cranmers house, he saw Mr. Hutchison (the first witness) and another person whom he did not know; that Loughridge was in his yard with his gun in his hand laughing and swearing; that he discovered Cranmer had been shot, and immediately went to town after a constable; that he found Mr. Gordon, a constable, and returned to the stable and found a gun (Hutcheson testified to the same gun) which was hid in the stable loft of Loughridge; that the gun appeared on examination to have been lately discharged. Other witnesses testified to the same facts, and one stated a few days before Cranmer was shot he met Loughridge in the streets of St. Louis, and that he commenced a conversation with him in which he spoke, harshly of Cranmer, and said that he would shoot Cranmer in less than ten days.

SEPT. TERM.
1840.

Loughridge
v.
The State.

A freeman,
accessary to a
felony com-
mitted by a
slave, is pun-
ishable in the
same manner
as though the
principal was
a freeman.

The counsel for the prisoner prayed the court to instruct the jury, that the jury cannot inflict by their verdict imprisonment, that the defendant cannot be punished by imprisonment in the Penitentiary under the present indictment.

The counsel took exception (as a matter of form I suppose) to some instructions given by the court, which will not be noticed.

By the 5th section of the 9th article of the act concerning crimes and their punishment, it is provided, that every person who shall be an accessary to any murder, or other felony before the fact, shall be, upon conviction, adjudged guilty of the offence in the same degree, and be punished in the same manner, as herein prescribed with respect to the principal in the first degree; and by the 31st section of the second article of the same act p. 171, of the digest of 1835, it is further provided, that every person who shall, on purpose, and of malice of aforethought, shoot at or stab another, with intent to kill, shall be punished by imprisonment in the penitentiary not exceeding ten years. But it seems that in the case of slaves being convicted of any offence punishable by this act with imprisonment in the penitentiary, the punishment is changed by a subsequent act viz: the act of 1836, and therefore it is that the counsel for the prisoner insists that the prisoner cannot be punished by imprisonment in the penitentiary under this indictment. If the prisoner were a slave this argument would be irresistable; but as the presumption that he is a free man arises from the face of the record he must be held to the punishment prescribed for a freeman. The fifth section of the ninth article does not provide that the accessory shall be punished in the same manner that his individual principal would be, but in the same manner as is in that act prescribed with respect to the principal in the first degree. The circuit court there committed no error in refusing to give this instruction.

But a new trial was also moved, and it was charged that the court committed error in refusing that, as well as in refusing the instruction above mentioned. The evidence was such that it appears to me no jury ought to hesitate a moment to find a verdict of guilty on it.

For the reasons above given, the judgment of the circuit court ought in my opinion to be affirmed, and such being the opinion of the other judges of this court it is accordingly affirmed.